No. 25-793

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

EILEEN GAYLE COLEMAN AND ROBERT CASTRO, on behalf of
themselves and all others similarly situated,

Plaintiffs-Appellants,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION AND USAA
GENERAL INDEMNITY COMPANY,

Defendants-Appellees

_____

On Appeal from the
United States District Court for the Northern District of California
The Honorable Robert S. Huie
No.  21-cv-217-RSH-KSC

_____

APPELLANTS' REPLY BRIEF

_____

CONSUMER WATCHDOG
Harvey Rosenfield (SBN: 123082)
6330 South San Vincente Blvd., Suite 250
Los Angeles, CA 90048
Tel: (310) 392-0522

Counsel for Plaintiffs-Appellants
(other counsel identified in signature block)

**Table of Contents**

Introduction ...........................................................................................1

Argument ...............................................................................................3

    I.    Section 11628(f)(1) does not exempt USAA from § 1861.16(b)'s lowest-priced-affiliate requirement. ......................................................3

        A. Nothing in § 11628(f)(1)'s plain language—explicitly or by any reasonable implication—exempts USAA from § 1861.16(b)...........................................................................................6

        B. The Legislature's failure to provide an express exemption from § 1861.16(b) in § 11628(f)(1) precludes implying one. ......9

        C. The legislative history confirms what the plain language make clear: § 11628(f)(1) was never intended to exempt USAA from § 1861.16(b). ..............................................................10

        D. Common sense likewise confirms that USAA only ever sought—and the Legislature only granted—a discrete exemption, limited to excusing USAA from Proposition 103's "take-all-comers" rule. ......................................................12

        E. Enforcing § 1861.16(b) is fully consistent with § 11628(f)(1)...........................................................................15

        F. Agency actions do not lend USAA any more support than the unavailing statutory text and legislative history................17

          1. The CDI's market conduct examination of Garrison did not absolve USAA of its failure to comply with § 1861.16(b)...........................................................................18

          2. Similarly, the Commissioner's approval of USAA's rate filings is not evidence of the company's compliance with § 1861.16(b)...............................................................20

i

II. Section 1861.16(b) controls—and USAA has violated it. .....................21

    A. USAA cannot evade § 1861.16(b) by pretending that it only applies to "non-specialty" insurers. ...................................21

    B. USAA cannot evade § 1861.16(b) by claiming that it was "not part of" Proposition 103 and therefore warrants less deference. ................................................................................23

III.   USAA's misreading of § 11628(f)(1) makes it unconstitutional. ....24

IV.   Section 1860.1 does not bar this suit. ................................................26

V.    Alternatively, this Court should certify the dispositive questions of state law in this case to the California Supreme Court. ..............30

Conclusion..............................................................................................34

ii

## Table of Authorities

**Page(s)**

**Cases**

*Amwest Surety Ins. Co. v. Wilson,*
11 Cal. 4th 1243 ..................................................................................24

*Arias v. Superior Ct.,*
46 Cal. 4th 969 (2009) .........................................................................17

*Byworth v. USAA Cas. Ins. Co.,*
No. CV 17-153-BLG-TJC, 2018 WL 3971909 (D. Mont. Aug.
20, 2018) ........................................................................................13, 32

*California Cannabis Coalition v. City of Upland,*
3 Cal. 5th 924 (2017) ...........................................................................10

*Carlin v. DairyAmerica, Inc.,*
705 F.3d 856 (9th Cir. 2013) ...............................................................26

*Cnty. of Amador v. El Dorado Cnty. Water Agency,*
76 Cal. App. 4th 931 (1999) ..................................................................9

*Commonwealth Utilities Corp. v. Goltens Trading & Eng'g PTE Ltd.,*
313 F.3d 541 (9th Cir. 2002) ...............................................................31

*Complaint of McLinn,* 744 F.2d 677 (9th Cir. 1984) ...........................................32

*Davidson v. United Servs. Auto. Ass'n,*
No. 2:20-CV-00527-JWH-MAA, 2025 WL 1452558 (C.D. Cal.
May 14, 2025) ......................................................................................32

*Davidson v. United Servs. Auto. Ass'n,*
No. CV20-00527-CJC, 2020 WL 4390379 (C.D. Cal. Mar. 10,
2020) ....................................................................................................32

*Donabedian v. Mercury Ins. Co.,*
    116 Cal. App. 4th 968 (2004) ......................................................28, 29, 30

*Elkins v. Moreno,*
    435 U.S. 647 (1978)..............................................................................33

*Farmers Ins. Exchange v. Superior Court,*
    2 Cal. 4th 377 (1992) ...........................................................................28

*Fogel v. Farmers Grp., Inc.,*
    160 Cal. App. 4th 1403 (2008) ............................................................28

*Found. For Taxpayer & Consumer Rights v. Garamendi,*
    132 Cal. App. 4th 1354 (2005) .......................................................25, 26

*In re Gadlin,*
    10 Cal. 5th 915 (2020) .........................................................................19

*Hayes v. USAA Cas. Ins. Co.,*
    No. C12-1072JLR, 2012 WL 13024809 (W.D. Wash. Dec. 10,
    2012) ....................................................................................................32

*Hinojos v. Koh's Corp.,*
    718 F.3d 1098 (9th Cir. 2013)..............................................................32

*Johnson v. Torres,*
    122 F.4th 1140 (9th Cir. 2024)..............................................................31

*King v. Nat'l Gen. Ins. Co.,*
    129 F. Supp. 3d 925 (N.D. Cal. 2015) .................................................29

*Knevelbaard Dairies v. Kraft Foods, Inc.,*
    232 F.3d 979 (9th Cir. 2000).................................................................26

*L&S Framing, Inc. v. Occupational Safety & Health Appeals Bd.,*
    93 Cal. App. 5th 995 (2023) .................................................................19

*MacKay v. Superior Court,*
    188 Cal. App. 4th 1427 (2010) .........................................................26, 27

iv

*Murray v. BEJ Mins., LLC,*
   924 F.3d 1070 (9th Cir. 2019) ................................................................33

*People v. Canty,*
   32 Cal. 4th 1266 ........................................................................................11

*People v. Elmore,*
   59 Cal. 4th 121 (2014) .............................................................................10

*People v. Statum,*
   28 Cal. 4th 682 (2002) ....................................................................9, 15, 22

*Rejoice! Coffee Co., LLC. v. Hartford Fin. Servs. Grp., Inc.,*
   No. 20-CV-06789-EMC, 2021 WL 5879118 (N.D. Cal. Dec. 9,
   2021) ...........................................................................................................30

*T-Mobile USA Inc. v. Selective Ins. Co. of Am.,*
   908 F.3d 581 (9th Cir. 2018) ...................................................................31

*Thompson v. Paul,*
   547 F.3d 1055 (9th Cir. 2008) .................................................................31

*Villanueva v. Fidelity Nat. Title Co.,*
   11 Cal. 5th 104 (2021) ........................................................................27, 28

**Statutes**

Proposition 103 ..................................................................................*passim*

Proposition 103 § 8(b) ..............................................................................24

CAFA, 28 U.S.C. § 1453(b) ......................................................................32

Cal. Ins. Code Art. 10 ...............................................................................13

California Insurance Code § 1816.61(b) ..................................................29

California Insurance Code § 1860.1 ................................................... 26-29

California Insurance Code § 1860.2 .................................................................28

California Insurance Code § 1861.02 ..............................................................23

California Insurance Code § 1861.02(b) .....................................................*passim*

California Insurance Code §1861.02(b)(2) ..................................................23, 24

California Insurance Code § 1861.02(c)(1) ....................................................26

California Insurance Code § 1861.16(b) .....................................................*passim*

California Insurance Code § 1861.16(c)(1) .....................................................8, 9

California Insurance Code § 1861.025 ............................................................26

California Insurance Code § 11628 ..........................................................5, 9, 12

California Insurance Code § 11628(f)(1) ...................................................*passim*

**Other Authorities**

Alaska R. App. P. 407 .....................................................................................32

CA Const. Article II § 10(c) .......................................................................24, 35

Cal. R. Ct. Rule 8.548(a) ................................................................................31

Cal. R. Ct. 8.548(f)(1) ....................................................................................33

California Constitution....................................................................................10

John DiMugno, *California Supreme Court Narrows Insurance*
   *Industry's Ratemaking Immunity*.....................................................28

Supreme Court Rule 13 ..................................................................................32

vi

## Glossary

| | |
|---|---|
| Class Br. | The Plaintiff Class's Opening Brief (Docket 11) |
| USAA Br. | USAA's Answering Brief (Docket 18.1) |
| CDI | California Department of Insurance |
| ER | Excerpts of Record |
| SER | Supplemental Excerpts of Record |
| FER | Further Excerpts of Record |

## Introduction

This appeal turns on a legal question no California court has ever answered: Does § 11628(f)(1) of California's Insurance Code exempt USAA from § 1861.16(b), an amendment to Proposition 103 that requires all insurers with affiliates to sell Good Driver customers a Good Driver Discount policy from the affiliate with the lowest rates for that coverage?

The district court's June 22, 2021 order on a motion to dismiss (Bencivengo, J.) ("MTD Order") held that USAA is not exempt from § 1861.16(b), adopting Plaintiffs' view. The district court's January 9, 2025 order on cross-motions for summary judgment (Huie, J.) ("SJ Order") reached the opposite conclusion.[1]

The initial MTD Order got it right. The text, history, and purpose of § 11628(f)(1) show that it was designed to do one—and only one— thing: allow USAA to sell exclusively to current and retired

---

[1] The case previously handled by Judge Bencivengo was reassigned to Judge Huie on June 22, 2022.

1

government or military personnel (and their families), including

"segments" of that population (such as officers while excluding

enlisted personnel), thus exempting USAA from Prop. 103's Good

Driver "take-all-comers" requirement. But § 11628(f)(1) says nothing

about—and is not an escape hatch from—§ 1861.16(b) or any other

section of the Insurance Code. Nothing in the text, purpose, or

history of § 11628(f)(1) suggests otherwise. As correctly held in the

MTD Order, § 11628(f)(1) does not mean that an insurance group that

limits sales to a "segment" of the military "need not comply with

section 1861.16(b)." 3-ER-288.

In short, § 11628(f)(1) addresses whom USAA may choose to

insure, not which affiliate must issue the policy to qualified Good

Drivers.

USAA's contrary reading is atextual, opportunistic, and

disingenuous. It would weaken one of Prop. 103's core consumer

protections. It would turn a narrow membership carve-out into a

license to overcharge Good Drivers. Nothing in the statute's words,

2

context, or history supports that result. And, if § 11628(f)(1) really meant what USAA argues, it would be unconstitutional as conflicting with § 1861.16(b) and frustrating the purposes of Prop. 103. This Court should reverse the judgment in USAA's favor.

Alternatively, this Court should certify the statutory questions here to the California Supreme Court. This case raises questions about the proper interpretation of California statutes that no California court has addressed. The Court should certify the questions if it finds the answers to be unclear under California law.

## **Argument**

### I.  **Section 11628(f)(1) does not exempt USAA from § 1861.16(b)'s lowest-priced-affiliate requirement.**

USAA fundamentally misreads § 11628(f)(1), treating its prefatory phrase, "*Nothing in … this code*" as its operative language. See USAA Br. at 34 (calling "*nothing in*" the "most important language in Section 11628(f)(1)"); USAA Br. at 42 (arguing that "In short, this court can resolve this appeal simply by holding that "'*nothing' means 'nothing'*"). "*Nothing in*" does not define USAA's

3

obligations. The operative language, which does, comes next:

> [N]othing in … this code **shall prohibit an insurer from limiting the issuance of insurance to persons who engage in, or have formerly engaged in, governmental or military service** *or segments of categories thereof*, and their spouses, dependents, and former dependents *or spouses*. (Boldface and italics added).

The bolded language above is key. Added in 1989,[2] shortly after Prop. 103 passed, it served a narrow and undisputed purpose: it let USAA continue to limit its insurance offerings to military (or government) personnel and their families despite Prop. 103's new Good Driver "take-all-comers" mandate, set forth in Section 1861.02(b). *See* USAA Br. at 13–14; Class Opening Br. at 11-12, 23, 31-33.[3] As USAA concedes, the 1989 amendment did *not* authorize it to

---

[2] The block quote above reflects a 1990 amendment. In 1989, as initially passed, the Legislature used the word "precludes" instead of "shall prohibit" and the phrase "limiting the issuance of *its* insurance." Neither defendants nor the Class have considered those changes significant to this case.

[3] In 1989, USAA also sold insurance to a limited group of federal non-military government employees to whom it no longer sells insurance. Neither party considers that customer group significant to this case.

4

restrict its customer base to the military segment that USAA

preferred: officers. The 1989 amendment thus did not resolve the

threat to USAA's business model—which limited sales exclusively to

officers (and their families).[4]

So, in 1990 USAA returned to the Legislature to request an

amendment that would let it continue selling exclusively to military

officers (and their families), without selling to enlisted personnel. The

Legislature obliged by adding the phrase "or segments of categories

thereof" to § 11628, authorizing the company to continue to limit

eligibility to a subset of military personnel (i.e., officers).

USAA cannot and does not contend that the 1989 amendment—

which lacked the phrase "or segments of categories thereof"—

---

[4] The report issued by the Senate Rules Committee questioned the constitutionality of the bill that created § 11628(f)(1), noting that "[l]egislation that amends Proposition 103 must be in furtherance of its purpose" and the bill "restricts a key provision of Proposition 103, the 'take all comers' provision." 2-ER-056. But the Class has not raised any claim challenging this aspect of § 11628(f)(1) and that question is not before the Court.

5

allowed it to sell to officers but not enlisted personnel. That is why USAA sought the 1990 amendment. Yet from this targeted 1990 amendment, USAA now spins an implausible tale.

USAA contends that merely by adding *a single word*, "segments," the Legislature transformed a discrete carve-out designed to excuse the company from complying with Prop. 103's Good Driver "take-all-comers" requirement, into a license to evade other provisions of the Insurance Code too, including § 1861.16(b). That reading conflicts with the text, structure, and legislative history of § 11628(f)(1) and flouts settled principles of statutory construction. Exemptions must be construed narrowly, and courts do not presume the Legislature smuggles major policy changes into the law—especially into voter initiatives—through unstated, oblique implications.

**A. Nothing in § 11628(f)(1)'s plain language—explicitly or by any reasonable implication—exempts USAA from § 1861.16(b).**

Section 11628(f)(1) creates one exemption: it excuses USAA from Prop. 103's "take-all-comers" mandate by letting it "limit" its

6

customer base "to persons who engage in, or have formerly engaged

in, … military service or segments … thereof." It also adds that

"nothing in" the Code can nullify *that* exemption. But it says nothing

about any exemption from § 1861.16(b) or any other Insurance Code

sections.

What is more, even under USAA's inflated reading—treating

§ 11628(f)(1) as excusing its compliance not only with the "take all

comers" rule but also with § 1861.16(b)—GIC is still liable. At most,

USAA's theory would shield *United Services* from having to issue

policies to enlisted personnel.[5] But § 11628(f)(1) says nothing about

*GIC*'s independent obligation under § 1861.16(b) and § 1861.16(c)(1).

---

[5] USAA currently sells insurance in California through four entities. United Services Automobile Association ("United Services") sells to military officers; USAA Casualty Insurance Company ("CIC") sells to family members of officers; USAA General Indemnity Corporation ("GIC") sells to enlisted personnel; and Garrison Property and Casualty Insurance Company ("Garrison") sells to family members of enlisted personnel. In 1989 and 1990, USAA only sold insurance through United Services and CIC and as discussed below, there is no evidence that the Legislature was aware of CIC's existence. The parties and the district court use "USAA" to refer to the insurance group as a whole.

7

Those provisions require GIC to "sell" its Good Drivers the lowest-priced policy issued by any USAA affiliate—here, United Services—unless GIC has obtained the only exemption from that obligation that the Code allows, the one created by § 1861.16(c)(1). GIC has never sought that exemption. And GIC indisputably has failed to sell Class Members—all of them statutorily eligible Good Drivers—policies issued by United Services. That violates the Code even under USAA's interpretation.

USAA's repeated refrain that the Class seeks to "force United Services to insure them" is equally flawed. The Class has taken no position on how USAA should meet its obligations going forward. But what USAA cannot do—however it meets its obligations under § 1861.16(b)—is keep charging Good Drivers more than the lowest price any USAA affiliate offers.

USAA's gloss on § 11628(f)(1) not only stretches that section beyond its plain language, it creates an exemption to § 1861.16(b)

8

beyond the only exemption that the Legislature intended, which it set out in § 1861.16(c)(1).

### B. The Legislature's failure to provide an express exemption from § 1861.16(b) in § 11628(f)(1) precludes implying one.

USAA's problem is not merely that the Legislature has amended § 11628 twice without including any express exemption from § 1861.16(b). Its problem is also that settled California law prohibits courts from creating exemptions beyond what the Legislature clearly expressed. *Cnty. of Amador v. El Dorado Cnty. Water Agency*, 76 Cal. App. 4th 931, 966 (1999) ("In keeping with general principles of statutory construction, exemptions are construed narrowly and will not be unreasonably expanded beyond their terms."). Courts may "not rewrite statutes to conform to a presumed [legislative] intent that was not expressed." *People v. Statum*, 28 Cal. 4th 682, 689–90 (2002).

These presumptions against implied exemptions apply with particular force where an implied exemption would erode a core protection enacted into law by voter initiative: here, by eroding the

9

20% Good Driver discount mandated by § 1861.02(b), a key part of Prop. 103 protected by § 1861.16(b). The initiative power is "a paramount structural element" of the California Constitution," and "without an unambiguous indication that a provision's purpose was to constrain the initiative power," courts will not presume it. *California Cannabis Coalition v. City of Upland*, 3 Cal. 5th 924, 931, 946 (2017).

Section 11628(f)(1) creates no exemption from § 1861.16(b), express or implied.

## C. The legislative history confirms what the plain language make clear: § 11628(f)(1) was never intended to exempt USAA from § 1861.16(b).

Not only the statutory text, but also the purpose, historical context, related statutes, and the conditions existing at a statute's enactment all cut against USAA's theory of this case. See *People v. Elmore*, 59 Cal. 4th 121, 139 (2014) ("[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a measure comports with its purpose … The intent of the law prevails

10

over the letter of the law and the letter will, if possible, be so read as to conform to the spirit of the act.") (quoting *People v. Canty*, 32 Cal. 4th 1266, 1276–77) (internal quotations omitted).

First, like the text, the legislative history of § 11628(f)(1) is silent about any intent to exempt USAA from § 1861.16(b). The only legislative reports in the record describe the 1990 amendment to § 11628(f)(1) — on which USAA hangs its theory of this case — as a mere "clarification" of the 1989 amendment. 2-ER-67–72. That is telling. Transforming a discrete exemption from the "take-all-comers" requirement into a broader escape from one or more other Code provisions would have been a substantial expansion, not a "clarification."

Second, the bill that became the 1990 amendment and the bill that created § 1861.16(b) progressed through the Legislature in virtual lockstep. If the 1990 amendment had been meant to exempt one of California's largest auto insurers from § 1861.16(b), someone — a bill sponsor, a committee report, a legislative analyst — would have

11

said so. The Court should not assume that the Legislature was mindlessly enacting conflicting statutory regimes.

USAA's theory thus rests not on the Legislature's language or its actual purpose but on reading into § 11628(f)(1) what the Legislature conspicuously left out.

The MTD Order correctly rejected that approach, ruling that "nothing in [§ 11628(f)(1)] indicates that an insurer adopting such a practice [of limiting issuance to military members of a particular status or pay grade] need not comply with section 1861.16(b)." 3-ER-288. This Court should do the same.

**D. Common sense likewise confirms that USAA only ever sought — and the Legislature only granted — a discrete exemption, limited to excusing USAA from Proposition 103's "take-all-comers" rule.**

In 1989 and 1990, when it was lobbying the Legislature for amendments to § 11628, USAA served a narrow military customer base in California: exclusively officers and their families. It did not serve any other "segments" of the military population in California and did not begin to insure enlisted personnel until 1998.

12

Accordingly, exempting USAA from liability for a practice it didn't start engaging in for almost another decade was not on anyone's mind. There is no evidence that USAA asked the Legislature to consider or bless that practice and no evidence that the Legislature did.

Yet, resisting this commonsense conclusion, USAA speculates that the Legislature knew in 1990 that it was insuring officers through United Services[6] but their former spouses and dependents through another affiliate, CIC—and, moreover, that the Legislature silently approved that practice. Surely, so USAA's argument goes, the

---

[6] USAA repeatedly converts references in the legislative record to "USAA" as references to "United Services." Thus, for example on pages 43 and 44 of its brief, USAA states that the "legislative history repeatedly states that Article 10 requires *United Services* to sell good-driver policies only to *its* 'eligible' customers." But the cited statements refer to *USAA*, not United Services. See also USAA Br. at 56, citing statements from the legislative record for the proposition that the provisions of § 1861.02(b) were "never meant" to force "*United Services*" to insure non-officers, only to offer a good driver discount "to *its* insureds." Again, the references are in fact to USAA. There is no evidence in this record that, in 1989 and 1990, the Legislature knew anything about USAA selling insurance through more than one company.

13

Legislature must have intended, without saying so, to implicitly grant USAA an exemption from § 1861.16(b) so that CIC need not offer Good Drivers among the family members of officers that it insured lower priced Good Driver discount policies offered by United Services. This theory collapses under its own weight.

First, it's pure conjecture. Nothing in the legislative history suggests the Legislature knew about CIC and its operations. USAA has not pointed to one mention of CIC in the legislative history of § 11628(f)(1) or any other legislation.

Second, even if the Legislature knew about CIC, it is speculative whether that knowledge would have implicated § 1861.16(b). The only evidence in the record regarding the relative rates charged by United Services and CIC for Good Driver discount policies governed by § 1861.16(b) shows that, throughout the Class Period, CIC's and United Service's rates were very close, with CIC, in fact, generally charging slightly *lower* rates than United Services for Good Driver coverage. 1-FER-7. That stands in stark contrast to the disparity

14

between the much higher rates that Class Members were forced to pay for coverage from GIC compared to United Services.[7]

Third, even if the Legislature knew of CIC and its rates relative to United Services', that hypothetical knowledge is totally inadequate to conclude that the Legislature may have *impliedly* intended to confer an exemption that it failed to express. And as already shown, California law allows no such inferences. Courts will "not rewrite statutes to conform to a presumed [legislative] intent that was not expressed." *People v. Statum*, 28 Cal. 4th at 689–90.

### E.  Enforcing § 1861.16(b) is fully consistent with § 11628(f)(1).

USAA presses one last argument about legislative purpose: that "it would have made no sense" for the Legislature to amend § 11628(f)(1) in 1990—by adding the word "segments"—only to

---

[7] Responsibility for the paucity of evidence regarding CIC and its operations falls on USAA, not the Class. As the proponent of the theory that the Legislature presumptively knew about CIC and thus implicitly intended to grant USAA an exemption permitting practices potentially in violation of § 1861.16(b), USAA bore the burden of adducing evidence to substantiate its theory, if any evidence existed.

15

"completely undermine it a week later" by enacting § 1861.16. This argument rests on a faulty premise.

Enforcing § 1861.16(b) does not "undermine" § 11628(f)(1). USAA Br. at 46. The two provisions address different subjects. Section 11628(f)(1) governs *who* USAA may insure—allowing it to limit its customer base to military personnel and, if it chooses, to a "segment" of that population (officers but not enlisted members). But § 1861.16(b), by contrast, governs *what* USAA must sell to Good Drivers once it decides to insure them—requiring it to sell all statutorily eligible Good Drivers a good driver discount policy from its affiliate with "the lowest rates for that coverage."

These two statutes operate on different planes. One governs eligibility to buy insurance from USAA; the other governs the required discount for all Good Driver customers. The Legislature's inclusion of a "notwithstanding" clause at the beginning of § 11682(f)(1) does not change that. A "notwithstanding" clause creates exceptions only in cases of provisions that otherwise conflict,

16

*Arias v. Superior Ct.*, 46 Cal. 4th 969, 983 (2009), and §§ 11628(f)(1) and 1861.16(b) do not conflict.

As the MTD Order correctly concluded: "Regardless of what Defendants' Placement Rules authorize [i.e., separating policyholders by pay grade] or whether the Insurance Commissioner approved them, Defendants have not established that they are entitled to bypass the requirements of § 1861.16(b)." 3-ER-289.

### F. Agency actions do not lend USAA any more support than the unavailing statutory text and legislative history.

Unable to ground its claimed exemption in the statutes or their history, USAA turns, next, to regulatory defenses—specifically, that, whatever the Code may say, its practice of using different affiliates to sell Good Driver policies to different policyholders has been approved by: (a) the Department of Insurance's (CDI) Market Conduct Exam of USAA's Garrison affiliate and (b) the Commissioner's approval of its affiliates' rate filings. USAA Br. at 19-22, 46-48. According to USAA, the CDI's regulatory actions immunize it from accountability. USAA's arguments are factually

17

and legally unsupported.

> **1.** ***The CDI's market conduct examination of Garrison did not absolve USAA of its failure to comply with § 1861.16(b).***

USAA argues that the CDI's 2014 market conduct examination of its Garrison affiliate amounted to implicit regulatory approval of its unlawful Good Driver Discount practices. USAA Br. at 19–20. Judge Huie rightly rejected that argument during oral argument on the parties' cross-motions for summary judgment. This Court should do the same.

As the SJ Order explained: the CDI's market conduct examination did not explicitly approve USAA's practice of charging GIC Good Drivers more than United Services Good Drivers for the same coverage; to the contrary, the CDI expressly disclaimed any such inference. The report of the examination states that:

> All unacceptable or non-compliant activities may not have been discovered. Failure to identify, comment on, or criticize noncompliant activities … *does not constitute acceptance* of such practices.

1-SER-13 (emphasis added); 2-SER-368.

18

The SJ Order could also have added that: (a) contrary to USAA's repeated attempts to conjure the Department's "approval" of its practices, the record contains no evidence that the CDI actually scrutinized USAA's compliance with 1861.16(b) during the market conduct examination;[8] and (b) in any event, the Commissioner lacks authority to approve conduct that the Insurance Code prohibits. See *In re Gadlin*, 10 Cal. 5th 915, 926 (2020) ("[F]inal responsibility for the interpretation of the law rests with the courts," not administrative agencies); *L&S Framing, Inc. v. Occupational Safety & Health Appeals Bd.*, 93 Cal. App. 5th 995, 1009 (2023) ("[a]n administrative agency cannot alter or enlarge" the scope of the statute it is enforcing

---

[8] USAA misrepresents that the CDI's examination "centered" "specifically" on whether Garrison was complying with § 1861.16(b). See USAA Br. at 19 (citing a single page in the record, 2-SER-379, which does not support that claim). The CDI's 22-page examination report mentions § 1861.16(b) only twice—once at 2-SER-379 and once at 2-SER-385—and both times merely as part of a long list of statutory provisions. The examination itself was limited: the CDI reviewed just 25 in-force policies and 32 terminated and declined policies.

19

through its own construction or practices).[9]

      **2.**     *Similarly, the Commissioner's approval of USAA's rate filings is not evidence of the company's compliance with § 1861.16(b).*

USAA likewise misreads the Commissioner's approval of its affiliates' rate filings as evidence of its implicit exemption from § 1861.16(b). USAA Br. at 47. The Commissioner, however, explicitly rejects that inference. When it approves a rate change application, the Commissioner issues a notice that states:

- If any portion of the application [seeking approval of rates] or related documentation conflicts with California law, that portion *is specifically not approved.*

- This approval [of rates] *does not constitute an approval* of underwriting guidelines ….

- Policy forms and underwriting guidelines included in this filing were reviewed only insofar as they relate to rates ….

---

[9] USAA also repeatedly conflates its own "long-standing practices" with unsubstantiated references to the CDI's purported practices. See, e.g., USAA Br. at 4, 20, 30, 34, 33, 34, 35, 42, 46, 47, 48 (referring to "USAA's longstanding practice of limiting its offerings," "the Department's longstanding historical practice," "long-settled administrative construction and practice," and similar formulations).

- The Commissioner may at any time take any action allowed by law if he determines that any underwriting guidelines … conflict with any applicable laws or regulations.

2-ER 21-22 (¶ 15) (emphasis added).

This Court should reject USAA's invitation to infer "approval" from silence in rate approvals that expressly disclaim that inference.

## II. Section 1861.16(b) controls—and USAA has violated it.

Section 1861.16(b) imposes a straightforward obligation: when insurers operate under common ownership, management, or control—as United Services and GIC do—they must sell all eligible Good Drivers a discount policy from their affiliate with the lowest rate. For USAA, that means having GIC sell each Class Member a policy from United Services—its lowest-priced affiliate. Its refusal to do that violates § 1861.16(b).

### A. USAA cannot evade § 1861.16(b) by pretending that it only applies to "non-specialty" insurers.

USAA argues that because the impetus for § 1861.16(b) involved misconduct by State Farm—a non-specialty insurer—§ 1861.16(b)

21

must therefore apply only to non-specialty insurers. USAA Br. at 16, 34, 45. That argument fails for three reasons.

First, nothing in § 1861.16(b) supports that limitation. On its face, § 1861.16(b) applies to all insurers under common ownership, management, or control—without exception. And courts may not read exemptions into a statute that the Legislature did not include. *Statum*, 28 Cal. 4th at 689-90.

Second, USAA mischaracterizes § 1861.16(b)'s legislative history. While State Farm, a non-specialty insurer, may have been among the most visible offenders undermining Prop. 103's Good Driver Discount mandate, nothing in the statute or the legislative history of § 1861.16(b) suggests any intent to confine it solely to non-specialty insurers. See 2-ER-32, 40, 44.

Third, such a limitation would be senseless as a matter of policy: the abuse that § 1861.16(b) prohibits would undermine Prop. 103's Good Driver mandate no matter whether a general or specialty insurer engages in it.

22

**B. USAA cannot evade § 1861.16(b) by claiming that it was "not part of" Proposition 103 and therefore warrants less deference.**

Section 1861.16(b) was a vital legislative amendment to Prop. 103, enacted less than two years after the passage of the initiative, to rescue Prop. 103's Good Driver discount mandate from industry circumvention. Large insurers were steering some Good Drivers into higher-priced affiliates, effectively wiping out Prop. 103's requirement that all Good Drivers receive at least a 20% discount.

Initially, the Commissioner acted to stop this subversion by passing emergency regulations under the authority of § 1861.02, a core part of Prop. 103. 2-ER-30. When that failed, the Legislature stepped in to pass § 1861.16(b), which *saved* the discount mandated by section 1861.02(b)(2), one of Prop. 103's signal achievements. Without § 1861.16(b), insurers' evasions would have wiped out Prop. 103's Good Driver discount for Good Drivers whom an insurance group assigned to its substandard company, such as GIC. 2-EDR-33, 36.

23

In doing so, the Legislature met the voter-approved condition that any legislative amendments to Prop. 103 "further its purposes.'" Prop. 103 § 8(b); see also *Amwest Surety Ins. Co. v. Wilson*, 11 Cal. 4th 1243, 1247 (quoting Prop. 103 § 8(b)). Without § 1861.16(b), a major provision in Prop. 103 — § 1861.02(b)(2) — would have been gutted.

### III. USAA's misreading of § 11628(f)(1) makes it unconstitutional.

The Legislature may not amend Prop. 103 except to further its purposes. See USAA Br. at 36-41; see also CA Const. Article II § 10(c); Prop. 103 § 8(b); *Amwest Sur. Ins. Co. v. Wilson*, 11 Cal. 4th 1243, 1249 (1995). As a response to this restriction, USAA offers two arguments: (1) "Section 11628(f)(1) cannot undermine the purposes of Proposition 103 by frustrating Section 1861.16(b) because Section 1861.16(b) is not a part of Proposition 103" and (2) § 11628(f)(1) neither frustrates the purposes of Prop. 103 nor undermines § 1861.16(b). USAA Br. at 54–58. Both responses fall short.

First, voters passed Prop. 103 to mandate discount policies for Good Drivers. When several insurers threatened to circumvent that

24

mandate, gutting it by steering Good Drivers into affiliates with inflated rates before applying the mandated discount, first the Department and then the Legislature stepped in to prevent that abuse. 2-ER-030. Section 1861.16(b) became law to save the mandated Good Driver discount, one of Prop. 103's signal accomplishments. It therefore elevates form over substance to argue that § 1861.16(b) is entitled to less enforcement than Prop. 103 itself; § 1861.16(b) was enacted to preserve what no one disputes was one of Prop. 103's most important provisions—§ 1861.02(b), which mandates 20 percent Good Driver discounts. Without § 1861.16(b), § 1861.02(b) would have been gutted. It's irrelevant that § 1861.16(b) was enacted after Prop. 103 rather than as part of it. Section 1861.16(b) was enacted to save a critical part of Prop. 103.

Second, USAA's position trivializes *Found. For Taxpayer & Consumer Rights v. Garamendi*, 132 Cal. App. 4th 1354 (2005). There, the California Supreme Court considered a statute that purported to allow insurers to give "persistency" discounts to drivers. It held that the act was facially invalid "because it does not further the purposes

25

of and undermines one of the major purposes of Proposition 103," *id*. at 1363, which was to prohibit the absence of prior insurance from being a criterion for determining rates or premiums. See, e.g., § 1861.02(c)(1). So too here. USAA's misreading of § 11628(f)(1) is invalid because if it meant what USAA imagines, then that provision would not further and would undermine the purpose of § 1861.02(b), which is Prop. 103's guarantee that "every person who meets the [Good Driver] criteria" in § 1861.025 will receive a bona fide 20 percent discount for Good Driver coverage.

## IV.     Section 1860.1 does not bar this suit.

USAA's last defense—that § 1860.1 incorporates the filed-rate doctrine and bars this suit, USAA Br. at 63-70—fails for several reasons.

First, the filed rate doctrine does not exist in California. *Carlin v. DairyAmerica, Inc.*, 705 F.3d 856, 869 n.9 (9th Cir. 2013); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 992 (9th Cir. 2000). USAA's argument that it does rests on § 1860.1, as interpreted in *MacKay v. Superior Court*, 188 Cal. App. 4th 1427 (2010). But § 1860.1 does not

26

establish anything akin to the federal filed rate doctrine. As *MacKay* itself notes, "the fact that a rate plan may have been approved does not mean that the application of that rate plan" has also been approved. 188 Cal. App. 4th at 1451. And *MacKay's* interpretation of § 1860.1 has little, if any, persuasive value after the California Supreme Court's more recent ruling in *Villanueva v. Fidelity Nat. Title Co.*, 11 Cal. 5th 104 (2021), which made clear that § 1860.1 does not immunize all conduct related to rate making. 11 Cal. 5th at 114.

Second, even if a weak form of the doctrine exists in California, it would only reach challenges to the validity of approved rates—not to USAA's failure to sell a Good Driver policy to qualified individuals. The Class does not dispute United Services' or GIC's approved rates. It challenges USAA's failure to offer the *lowest* of those approved rates to all statutorily eligible Good Drivers in its customer base, as § 1861.16(b) requires. For more than thirty years, California courts have held that § 1860.1 does not bar claims that do not directly

27

challenge approved rates.[10]

Both Judge Bencivengo and Judge Huie rejected USAA's § 1860.1 defense, correctly pointing out that Class members are not challenging the reasonableness of GIC's or United Services' approved rates but, rather, USAA's practice of forcing enlisted personnel to purchase coverage from GIC. See 3-ER-286–88 (Bencivengo) ("none of these claims relate to whether the rates charged … are themselves reasonable. Therefore, section 1860.1 does not bar" them); 1-SER-7

---

[10] *See Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 394 (1992) (rejecting insurers' argument that the Insurance Code conditions suits to enforce Prop. 103 on prior resort to administrative process or grants the CDI "exclusive jurisdiction" over them); *Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968, 990–92 (2004) (rejecting argument that Code §§ 1860.1 or 1860.2 barred consumer suit to enforce Prop. 103); *Fogel v. Farmers Grp., Inc.*, 160 Cal. App. 4th 1403, 1415-18 (2008) (neither § 1860.1 nor the filed-rate doctrine barred policyholder's claim concerning unauthorized rate); *Villanueva v. Fidelity Nat'l Title Co.*, 11 Cal. 5th 104, 126–33 (2021) ("the Legislature knows how to prescribe exclusivity when it so intends" and "in the absence of such language, we infer the Legislature did not intend such a result"). *See generally* John DiMugno, *California Supreme Court Narrows Insurance Industry's Ratemaking Immunity*, 33 Cal. Ins. Law & Reg. Rptr. 1 (2021) (concluding that the California Supreme Court's 2021 decision in *Villanueva* "leaves no room for the argument that either § 1860.1 or § 1860.2 immunize what Prop. 103 prohibits.")

28

(Huie) ("[I]t seems to me what the plaintiffs are really challenging here are not the rates but rather the placement rules").

A third district court judge has likewise reached the same conclusion about § 1860.1's inapplicability to claims about § 1816.61(b). In *King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925 (N.D. Cal. 2015), the court addressed similar claims that an insurance group violated § 1861.16(b) by not selling a Good Driver policy from its lowest priced affiliate. The court held, much as Judges Huie and Bencivengo have, that "neither Section 1860.1 nor the filed-rate doctrine bars claims that an insurer's "conduct and practices … result in Plaintiffs being offered a policy with a higher DOI-approved rate when they should have been offered a policy with a lower approved rate." Those are claims about the "*application* of … approved rates," not claims about the rates themselves. 129 F. Supp. 3d at 935 (N.D. Cal. 2015) (emphasis added).

Third, the CDI has agreed that USAA's immunity defense is incorrect. In its 2003 amicus brief in *Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968 (2003), the Department emphasized that

29

§ 1860.1 does not concern "the authority of the Commissioner to approve rates." 2003 WL 23280980, at *13. That is because § 1860.1 predates Prop. 103—indeed, "it was not until" Prop. 103 that the Commissioner even gained prior-approval authority over rates. *Id.* See also *Rejoice! Coffee Co., LLC. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-CV-06789-EMC, 2021 WL 5879118, at *6 (N.D. Cal. Dec. 9, 2021) (reporting that, in a brief, Commissioner opined that section 1860.1 grants immunity only if (1) "the insurer's activity must be affirmatively authorized by the relevant ratemaking statutes," and (2) "there must be concerted action by two or more insurers").

USAA's interpretation of § 1860.1 thus fails for all three reasons.

**V. Alternatively, this Court should certify the dispositive questions of state law in this case to the California Supreme Court.**

This Court should reverse the SJ Order. But if the Court is uncertain about the underlying issues of California law, it should certify those questions to the California Supreme Court.

This appeal presents important, unresolved questions of first impression under California Insurance Code §§ 11628(f)(1) and

30

1861.16(b) — questions that the MTD and SJ Orders answer differently and that no California court has yet addressed. As explained in the Class's initial brief, certifying these questions to the California Supreme Court is therefore appropriate under Rule 8.548 of the California Rules of Court.

Certification is proper at this stage even if no party has previously requested it. *Johnson v. Torres*, 122 F.4th 1140, 1148 (9th Cir. 2024); *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 588 & n.6 (9th Cir. 2018). Certification not being raised in the district court is not a bar: the California Supreme Court accepts certification only from federal appellate courts, not federal district courts. Cal. R. Ct. Rule 8.548(a).[11]  It would also make little sense to deny

---

[11] The decisions USAA cites to suggest that failing to make a request for certification in the district court may waive it are inapposite. Each involved certification to a state high court that accepts such requests from federal district courts. The California Supreme Court does not. See USAA Br. at 59–61, citing *Thompson v. Paul*, 547 F.3d 1055, 1064–65 (9th Cir. 2008) (requesting certification to the Arizona Supreme Court under A.R.S. § 12-1861); *Commonwealth Utilities Corp. v. Goltens Trading & Eng'g PTE Ltd.*, 313 F.3d 541, 548–49 (9th Cir. 2002) (requesting certification to the Supreme Court for the

31

certification as a penalty for the Class's having filed this case in

federal court. If Plaintiffs had filed this action in state court, USAA

almost certainly would have removed it under CAFA, 28 U.S.C.

§ 1453(b), as it has done with numerous other class actions filed in

state courts throughout the United States, including in this Circuit.

*See, e.g., Davidson v. United Servs. Auto. Ass'n,* No. 2:20-CV-00527-

JWH-MAA, 2025 WL 1452558, at *3 (C.D. Cal. May 14, 2025);

*Davidson v. United Servs. Auto. Ass'n,* No. CV20-00527-CJC (MAAx),

2020 WL 4390379, at *2 (C.D. Cal. Mar. 10, 2020); *Byworth v. USAA*

*Cas. Ins. Co.*, No. CV 17-153-BLG-TJC, 2018 WL 3971909, at *1 (D.

Mont. Aug. 20, 2018); *Hayes v. USAA Cas. Ins. Co.*, No. C12-1072JLR,

2012 WL 13024809, at *2 (W.D. Wash. Dec. 10, 2012).

As the U.S. Supreme Court has long recognized, it is "obviously

---

Commonwealth of Northern Mariana Islands under NMI Supreme
Court Rule 13); *Complaint of McLinn*, 744 F.2d 677, 681–82 (9th Cir.
1984) (requesting certification to the Alaska Supreme Court under
Alaska R. App. P. 407). See also *Hinojos v. Koh's Corp.*, 718 F.3d 1098,
1108–09 (9th Cir. 2013) (belated request made only after oral
argument in this Court revealed an adverse outcome was likely).

desirable" for state courts to decide in the first instance important and unsettled questions of state law. *Elkins v. Moreno,* 435 U.S. 647, 662 (1978). Certification is therefore warranted here unless this Court concludes that California law is already clear.

USAA does not dispute that this case raises novel and dispositive questions about the Legislature's authority to limit a voter initiative. Its sole response is that those questions affect only them. USAA Br. at 61-62. USAA is wrong. The questions also affect the 200,000 policyholders harmed during the four years for which data was produced and the hundreds of thousands of enlisted Good Drivers who continue to pay GIC rates. The case thus raises "important public policy ramifications … of broad application." *Id.* at 61 (quoting *Murray v. BEJ Mins., LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019)).[12]

---

[12] Citing Cal. R. Ct. 8.548(f)(1), USAA also argues that the California Supreme Court "reserve[es] review for questions of broad legal significance and statewide impact." In fact, Rule 8.548(f)(1) merely states that the Court "may consider whether resolution of the question is necessary to secure uniformity of decision or to settle an important question of law, and any other factor the court deems appropriate." But if statewide impact is a factor, it is satisfied: the

33

Accordingly, if the Court is uncertain about how the California Supreme Court would answer the following questions, it should certify them to the California Supreme Court:

1. Did the California Legislature exempt USAA from §§ 1861.02(b) and 1861.16(b) of California's Insurance Code by enacting § 11628(f)(1)?

2. If so, did that exemption impermissibly amend Prop. 103 by conflicting with or frustrating its purposes rather than furthering them?

## Conclusion

The stakes in this case are large. Nearly 200,000 Class Members were denied the discount they are entitled to under California law. But also at stake is the integrity of Prop. 103, a landmark insurance reform and rate reduction voter-enacted initiative, which should be

---

hundreds of thousands of affected policyholders are scattered across the State. And this case raises important legal questions about the interpretation of statutes that impinge on Prop. 103, an initiative that affects every driver insured in the State of California.

34

liberally construed to further its purposes. Cal. Const. art. II § 10 (c).

This Court should reject USAA's attempt to evade Prop. 103 by manufacturing an implied exemption from 1861.16(b), applicable only to itself. It should reverse the judgment below and direct entry of judgment for the Class on liability issues, reserving damages for trial.

In the alternative, this Court should certify the controlling questions of state law underlying this appeal to the California Supreme Court.

August 15, 2025

Respectfully submitted,

*/s/ Michael Lieder*

**MEHRI & SKALET, PLLC**
Cyrus Mehri
Michael Lieder
2000 K Street NW, Suite 325
Washington, D.C. 20006
Tel: (202) 822-5100

35

**CONSUMER WATCHDOG**
Harvey Rosenfield (SBN: 123082)
Benjamin Powell (SBN: 311624)
6330 South San Vincente Blvd.,
Suite 250
Los Angeles, CA 90048
Tel: (310) 392-0522

**ANGOFF LAW**
Jay Angoff
5808 Connecticut Avenue
Chevy Chase, MD 20815
573-356-7177

**Mason LLP**
Gary Mason
Daniel Perry (SBN: 292120)
Theodore Bell
5335 Wisconsin Avenue NW, Suite 640
Washington, D.C. 20015
Tel: (202) 429-2290

*Attorneys for Plaintiffs and the Class*

36

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**

I am the attorney or self-represented party.

**This brief contains _____ words,** including _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.
29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated             .

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**                                 **Date**
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**                                             *Rev. 12/01/22*